# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| CLARISSA EDELHEIT, | : | |
|     Plaintiff, | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | |
| ANDREW SAUL, | : | No. 19-6000 |
| Commissioner of the | : | |
| Social Security Administration, | : | |
|     Defendant. | : | |

## MEMORANDUM OPINION

**TIMOTHY R. RICE**                                                                                   **October 20, 2020**
**U.S. MAGISTRATE JUDGE**

Plaintiff Clarissa Edelheit, 62, alleges the Administrative Law Judge ("ALJ") erred in denying her Disability Insurance Benefits (DIB) without: (1) specifically addressing her husband's third-party function report; (2) finding she suffered from limitations in concentration, persistence, or pace; and (3) including a sit-stand option in his Residual Functional Capacity (RFC) assessment.[1]  Pl. Br. (doc. 13) at 3.  Because the ALJ provided substantial evidence to support his findings, I deny Edelheit's request for review.

Edelheit filed for DIB in September 2016, more than nine months after her date last insured (DLI), December 31, 2015.  R. at 15-17.  Although she had worked in several law firms as a legal secretary before 2010, she testified she was laid off from her last firm that year and her subsequent search for a similar position was unsuccessful.  Id. at 36-37.  Edelheit claimed disability on the basis of depression, urge frequency and incontinence, insomnia, migraines and sinus headaches, fibromyalgia, chronic fatigue syndrome and degenerative disc disease, but has

---

[1] A claimant's RFC reflects "the most [she] can still do [in a work setting] despite [her] limitations."  20 C.F.R. § 404.1545(a).

not contested the ALJ's finding that only the degenerative disc disease and chronic fatigue syndrome were severe impairments. Id. at 17-20. The ALJ found that Edelheit had managed to work as a legal secretary for years despite her chronic fatigue syndrome and that there was insufficient evidence showing her degenerative disc disease would have prohibited her from continuing to perform that sedentary work as of her DLI. Id. at 23. Although Edelheit contests several aspects of the ALJ's opinion, I find the ALJ in each instance supported his determination with substantial evidence and therefore deny Edelheit's claim.

I. Edelheit's Husband's Third-Party Function Report

Edelheit argues that the ALJ improperly failed to address her husband's third-party function report. Pl. Br. at 3-6.

Generally, the ALJ must consider all evidence submitted, including reports from third parties regarding the claimant's condition and ability to work. Burnett v. Comm'r of Soc. Sec., 220 F.3d 112, 121 (3d Cir. 2000). When the ALJ rejects evidence, he must explain his reasoning. Johnson v. Comm'r of Soc. Sec., 529 F.3d 198 (3d Cir. 2008). However, in administrative appeals such as this, "the appellant bears the burden to demonstrate harm." Holloman v. Comm'r of Soc. Sec., 639 F. App'x 810, 814 (3d Cir. 2018). To meet this burden, the claimant must "explain [ ]… how the… error to which he points could have made any difference." Shinseki v. Sanders, 556 U.S. 396, 409 (2009). Here, Edelheit must explain how the ALJ's determination would have differed had he addressed her husband's report.

In his report, Edelheit's husband detailed his wife's limitations and activities. See R. at 166 ("[Edelheit] cannot sit or stand for long [and is] always complaining about neck and back pain"); id. at 167 ([Edelheit] "takes care of the house, writes bills, [and] cooks light meals," although he helps with "carry[ing] things"); id. (Edelheit was more social before her conditions,

2

and now "tosses and turns[,] and moans[…] in her sleep about left side pain."); id. at 168 (Edelheit maintains the house and does paperwork); id. at 169-70 (Edelheit goes outside three or four times per day, drives alone, shops, goes to the gym, watches their son's band, and visits her father); id. at 171 (Edelheit is not as happy or talkative as she once was, can walk ten minutes at a time, and follows written instructions well, although she sometimes struggles to remember spoken instructions); id. (Edelheit's conditions affect her lifting, standing, reaching, sitting, kneeling, and memory); id. at 172 (he has not noticed any unusual fears or behavior in his wife and she handles stress well, but does not handle changes in routine well).

Although the ALJ did not address Edelheit's husband's report, he considered other evidence setting forth the same complaints and abilities described in it.  From Edelheit's testimony, the ALJ considered Edelheit's alleged back issues "beginning in February 2012, including walking three blocks, standing for 1/2 hour, sitting for one hour and problems stooping and squatting, and lifting up to a gallon of milk," as well as her alleged claustrophobia in crowds and shyness in public.  Id. at 22-23.  The ALJ also considered evidence of Edelheit's activities, including driving, exercising, traveling, caring for family, attending her son's concerts, shopping, watching television, and cooking.  Id. at 22.

Although the ALJ did not directly address Edelheit's husband's report, he addressed the same evidence elsewhere in his decision.  Id. at 21-22.  The objective medical evidence the ALJ found inconsistent with Edelheit's claims was equally inconsistent with her husband's report.  Id. at 22-23.  The ALJ's failure to address the report was therefore harmless error and insufficient grounds for remand.  Shinseki, 556 U.S. at 409; see also Privette-James v. Colvin, No. 12-610, 2015 WL 4743769, at *2 (E.D. Pa. Aug. 11, 2015) (declining to remand despite ALJ's failure to address third party statement when similar information was addressed elsewhere in the opinion,

rendering the failure harmless error) (citing Bailey v. Astrue, No. 07–4595, 2009, WL 577455, at *11 (E.D. Pa. Mar. 4, 2009); Thompson v. Astrue, No. 07–2989, 2009 WL 7007996, at *15 (E.D. Pa. Jan.30, 2009); and DeStefano v. Astrue, No. 07–3750, 2009 WL 113744, at *10 (E.D. Pa. Jan.14, 2009)).

II.     Limitations in Concentration, Persistence, or Pace

Edelheit argues the ALJ erred by failing to note how her impaired concentration, persistence, or pace would limit her ability to perform her past relevant work (PRW) as a legal secretary. Pl. Br. at 6-12; see also R. at 52 (legal secretary is a skilled position).

Edelheit cites multiple cases remanding for reconsideration when an ALJ failed to adjust an RFC to incorporate "mild" mental functioning limitations.[2] Pl. Br. at 6-12. Here, however, the ALJ specifically found that Edelheit suffered from "no limitations" in that area. R. at 20. The ALJ made his determination that Edelheit suffered no limitations in concentration, persistence, or pace based on contradictions between Edelheit's alleged limitations and other record evidence. Id. (Edelheit suffered from "no limitations in any of the functional areas in the 'B' and 'C' criteria."). The ALJ accurately summarized the records from 2011-2015 that showed Edelheit was looking for full-time work, practiced yoga twice per week, exercised, was not depressed, stayed active, felt tired and frustrated during her job search, had a stable mood, and experienced stress and grief over the care and loss of her mother but did not seek therapy or even regular appointments for psychiatric medication management. Id. at 19-20. The ALJ set forth

---

[2] Edelheit also purports to cite one case remanding for failure to incorporate limitations relating to a non-severe mental impairment. Pl. Br. at 9 (citing Curry v. Comm'r of Soc. Sec., 2017 WL 825196 (D.N.J. March 2, 2017). In Curry, however, the ALJ found the claimant suffered from "mild to moderate" limitations in the four functional areas of psychiatric assessment, despite finding the alleged mental impairment was nonsevere. 2017 WL 825196, at *5. In contrast, the ALJ in this case found Edelheit suffered from "no limitations in any of the functional areas." R. at 20.

substantial evidence to support his finding that Edelheit suffered "no limitation" in concentration, persistence, or pace. Id. at 20.

Edelheit argues the ALJ erred when he found the opinion of the consulting physician, Dr. Rohar, "consistent with the evidence as a whole," id. at 23, yet failed to adopt Dr. Rohar's assessment that Edelheit suffered from mild limitations in concentration, persistence, or pace. Pl. Br. at 6-7; Reply (doc. 15 at 1-2).

This was not error. The ALJ did not purport to adopt all of the recommended limitations. R. at 23. Further, he was not bound to accept them; an ALJ may disregard a specific limitation even if he gives the opinion as a whole "significant" weight. See Wilkinson v. Comm'r of Soc. Sec., 558 F. App'x 254, 256 (3d Cir. 2014) ("As an initial matter, no rule or regulation compels an ALJ to incorporate into an RFC every finding made by a medical source simply because the ALJ gives the source's opinion as a whole 'significant' weight."). Here, the ALJ cited other medical evidence in addition to Dr. Rohar's opinion, specifically Edelheit's psychiatric records, to determine Edelheit was not limited in persistence, pace, or concentration. R. at 19-20.

The ALJ set forth substantial evidence to find Edelheit suffered no limitations in concentration, persistence, and pace, and therefore was not required to include them in his vocational expert hypothetical or RFC.

III. The Sit-Stand Option

Edelheit argues the ALJ erred by not limiting his RFC assessment to positions with a sit-stand option. Pl. Br. at 12-13.

I review an ALJ's decision to ensure the ALJ applied correct legal standards and that the decision is supported by substantial evidence. Rutherford v. Barnhart, 399 F.3d 546, 552 (3d Cir. 2005). The substantial evidence standard of review is deferential to the ALJ and forbids me

from re-weighing evidence or becoming a factfinder. Id. Substantial evidence consists of "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971). I find the ALJ's decision to decline a sit-stand option is supported by substantial evidence.

Edelheit submitted only three pieces of medical evidence related to her back condition that predated her DLI: (1) a 2009 MRI showing scoliosis she had suffered from since childhood; (2) one September 2015 medical note showing she complained of back pain to a treating physician; and (3) a 2018 chiropractor letter stating she received chiropractic treatment for less than one year after a 2013 car accident and returned to chiropractic treatment sometime prior to April 2018 even though she had already reached maximum medical improvement. R. at 15, 252, 376-79, 580. The ALJ noted the lack of timely medical evidence supporting Edelheit's claim of back pain, but also reviewed the post-DLI medical evidence, concluding that it too failed to support a finding of full disability. Id. at 21-23. Edleheit's PRW as a legal secretary was sedentary, id. at 52, and the ALJ concluded she did not qualify for DIB benefits because she was still able to perform the full range of sedentary work, id. at 23.

Although Edelheit identified portions of her post-DLI medical history in support of her need for a sit-stand option, the ALJ had substantial evidence to support his findings. In her brief, Edelheit specifically refers to a June 2016 CT scan showing lumbar scoliosis and severe degenerative disease of the lumbosacral spine (id. at 526), an October 2016 X-rays showing lumbar dextroscoliosis and disc space narrowing (id. at 274), a November 2016 MRI showing degenerative disc disease and stenosis/narrowing (id. at 269-70), her testimony that extended sitting or standing causes pain (id. at 40, 158), and her husband's report that she cannot sit or stand for long (id. at 166, 177). Pl. Br. at 12-13. The ALJ addressed the 2016 procedures and

Edelheit's testimony. R. at 22-23. Moreover, the ALJ took administrative notice, given the chronic process and development of degenerative disc disease, that the spinal conditions were likely present before Edelheit's DLI. Id. at 22. He concluded, however, that they nonetheless did not preclude sedentary work as of the DLI. Id. at 23.

In addition to the lack of pre-DLI medical evidence, the ALJ relied on the following post-DLI medical evidence to conclude Edelheit was able to perform the full range of sedentary work: (1) two normal hip X-ray reports from February 2016 and July 2017 (id. at 544, 509); (2) a 2017 Dexascan report showing normal bone mineral density in the lumbar spine (id. at 510); (3) a 2017 pain management doctor record showing Edelheit had normal strength in her lower extremities (id. at 446); (4) reports that Edelheit received successful injection treatments from 2016-2018 (id. at 784-848); (5) reports that Edelheit "no longer has radiating pain" (id. at 418); and (6) evidence that Edelheit is not a fall risk (id. at 625). From Edelheit's own testimony, generally corroborated by her husband's report, the ALJ considered that Edelheit also drives, lifts weights, practices yoga, travels abroad, cares for her family, attend's her son's activities, cooks, maintains the home, and shops. Id. at 22, 159-62, 167-70. Edelheit testified she struggles to walk three blocks, stand for thirty minutes, and sit for one hour, but the ALJ noted there was little medical evidence of these issues before Edelheit's DLI. Id. at 23, 40-41, 163. Moreover, despite Edelheit's testimony that her back problems began in 2012, id. at 37, the ALJ noted that other record evidence showed "she consistently reports September 2016 to be the date the symptoms began," id. at 22. The ALJ's decision to forego a sit-stand option in his RFC describing her condition as of her DLI is supported by substantial evidence. Richardson, 402 U.S. at 401.

An appropriate order accompanies this opinion.